UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GRUNER ENTERPRISES LLC, *d/b/a* Big Daddy Car Co. *d/b/a* Simple Auto Finance, and ROBERT GRUNER, III,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:20-CV-1440-B** |
| | § | |
| **ABC LOAN CO. OF MARTINEZ LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant ABC Loan Co. of Martinez LLC's Motion to Dismiss Plaintiffs' Complaint for *Forum Non Conveniens* and in the Alternative Motion to Transfer Venue (Doc. 15). For the reasons explained below, the Court **DENIES IN PART** and **GRANTS IN PART** the motion. Namely, the Court denies the motion to the extent it seeks dismissal. But the Court grants the motion insofar as it seeks transfer and **TRANSFERS** this case to the Southern District of Georgia, Augusta Division.

## I.

## BACKGROUND[1]

This dispute arises from a disagreement about the enforceability and terms of a contract, as well as the parties' obligations thereunder. Plaintiff Robert Gruner, III operates two used-car dealerships through Plaintiff Gruner Enterprises LLC. Doc. 34, Pls.' Resp., 2 (citing Doc. 35, Pls.'

[1] The Court draws this factual account from the parties' pleadings, as well as the briefing and evidence submitted in connection with the pending motion.

Resp. App., 110–11).[2] These dealerships offer "in-house financing," thus permitting customers to purchase vehicles by entering installment sale contracts with Gruner. Doc. 35, Pls.' Resp. App., 111–12. Defendant ABC Loan Co. of Martinez LLC ("ABC Loan") purchases receivables from financing lots like Gruner's. *Id.* at 175.

In June 2016, Gruner was introduced to the owner of ABC Loan, Donald Ward. *Id.* at 142–43. Ward and Gruner began negotiating a contract for ABC Loan to purchase some of Gruner's installment sale contracts. Doc. 34, Pls.' Resp., 3 (citations omitted). These negotiations culminated in the execution of a Master Purchase Agreement (MPA). *See* Doc. 15-1, Def.'s Mot. App., 3–11. In sum, the MPA governs the terms under which ABC Loan can buy installment sale contracts from Gruner. Among other terms, the MPA provides that ABC Loan can purchase an installment sale contract for fifty percent of the amount owed on the contract, and Gruner is then obligated to collect the funds owed on that contract and deposit those funds in ABC Loan's bank account. *Id.* at 4–5. The MPA also contains a forum-selection clause ("the FSC") that states, "Venue for any legal proceedings against [Gruner or ABC Loan] involving the interpretation for enforcement of this document shall be exclusively in COLUMBIA County, Georgia." *Id.* at 10.

Though Gruner does not contest the validity of the FSC, it challenges the choice-of-law clause in ABC Loan's copy of the fully executed MPA. *See* Doc. 34, Pls.' Resp., 6–7 (citations omitted). While ABC Loan's copy states that the MPA "shall be controlled, construed, and enforced in accordance with" Georgia law, Doc. 15-1, Def.'s Mot. App., 10, Gruner contends that the MPA it signed mandates the application of Texas law—not Georgia law. Doc. 34, Pls.' Resp., 6–7 (citations

---

[2] The Court refers to Plaintiffs collectively as "Gruner."

omitted). In support, Gruner offers a partially executed copy of the MPA that refers to Texas law, and Gruner denies that it agreed to the choice-of-law clause in ABC Loan's copy of the MPA. *Id.* at 1, 6–7 (citations omitted). Additionally, Gruner offers the opinion of a forensic-document examiner, who concluded that the MPA offered by ABC Loan was "altered by the substitution of pages 1 and 8." Doc. 35, Pls.' Resp. App., 256. Page eight contains the choice-of-law clause at issue. *See* Doc. 15-1, Def.'s Mot. App., 10.[3]

Gruner's allegations of fraud, however, do not form the basis of this lawsuit. Rather, in this removed action, Gruner alleges that ABC Loan has repeatedly harassed Gruner's customers in attempting to collect payment on its purchased installment sale contracts. *See* Doc. 5, Am. Notice of Removal, Ex. E-2, 1–3. Further, Gruner contends that the MPA is void due to illegality, because ABC Loan cannot receive ownership of the installment sale contracts under Texas law. *Id.* at 3. In connection with these allegations, Gruner brings claims for: (1) tortious interference with the installment sale contracts; (2) violations of the Texas Debt Collection Act (TDCA) based on ABC Loan's communications with Gruner's customers; and (3) a declaratory judgment that the MPA is void due to illegality. *Id.* at 12–17.

Upon removing this action based on diversity jurisdiction, ABC Loan filed its motion to dismiss the case based on *forum non conveniens* or transfer the case to the Southern District of Georgia, Augusta Division (Doc. 15). After the resolution of a discovery dispute between the parties, Gruner filed its response to ABC Loan's motion (Doc. 34), and ABC Loan filed a reply brief (Doc.

---

[3] Gruner also contests one portion of page one. According to Gruner, while the MPA offered by ABC Loan "lists 'Carisma Financial Corp.' as a d/b/a of Gruner Enterprises, . . . the [a]ctual MPA does not." Doc. 34, Pls.' Resp., 10 (citations omitted). This discrepancy is irrelevant for purposes of resolving ABC Loan's motion.

40). Accordingly, ABC Loan's motion is now ripe for review.

## II.

## LEGAL STANDARD

In a diversity action, district courts may employ the doctrine of *forum non conveniens* to decline to exercise jurisdiction over a suit even though jurisdiction is authorized. *See McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 423 (5th Cir. 2001) (citation omitted). *Forum non conveniens* contemplates a scenario where at least two forums are available in which the defendants are amenable to process and provides the district court with the criteria to choose the best forum. *Id.* at 424 (citation omitted).

*Forum non conveniens* is also the appropriate legal mechanism by which a defendant may enforce a forum-selection clause, and "for the subset of cases in which the transferee forum is within the federal court system," the doctrine is codified under 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Tex.*, 571 U.S. 49, 60 (2013).[4] A typical § 1404(a) analysis that does not involve a forum-selection clause requires a district court to "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote the 'interest of justice.'" *Id.* at 62–63 (quoting § 1404(a)). These relevant factors consider both the private interests of the litigants and those of the public. *Id.* at 62. Moreover, courts typically defer to the plaintiff's choice of forum and allocate a burden of "good cause" to the moving party to

[4] Both parties concede that the FSC, if enforceable and applicable, permits venue in federal court. *See* Doc. 34, Pls.' Resp., 25; Doc. 40, Def.'s Reply, 15–16. The Court thus analyzes ABC Loan's motion as a motion for transfer rather than dismissal. *See, e.g.*, *LeBlanc v. C.R. Eng., Inc.*, 961 F. Supp. 2d 819, 830 (N.D. Tex. 2013) (concluding that § 1404(a) was the proper mechanism for enforcing a forum-selection clause that permitted venue in state or federal court).

demonstrate that the transferee venue is more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

However, where "the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine*, 571 U.S. at 62. Only "extraordinary circumstances unrelated to the convenience of the parties" warrant the denial of a § 1404(a) motion. *Id.* Consequently, where the parties are bound to a valid forum-selection clause, the usual *forum non conveniens* analysis changes in three ways. *Id.* at 63.

First, a "plaintiff's choice of forum merits no weight" and is therefore irrelevant. *Id.* The plaintiff has the burden of demonstrating "why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 64. Second, the Court should disregard "arguments about the parties' private interests" and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* The Court "may consider arguments about public-interest factors only." *Id.* These factors include:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*In re Volkswagen*, 545 F.3d at 315 (alterations incorporated) (citation omitted). Third, where a party has disregarded the forum-selection clause and filed suit in a different forum, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules," which may, in some circumstances, affect the Court's evaluation of the public-interest factors. *Atl. Marine*, 571 U.S. at 64. In practice, then, these modifications require the party acting in violation of the forum-selection clause to "bear the burden of showing that public-interest factors overwhelmingly disfavor a

transfer." *Id.* at 67.

## III.

## ANALYSIS

To determine whether transfer is appropriate, the Court must decide whether the FSC applies to this action. The Court first examines whether the FSC is enforceable. Holding that it is, the Court then explains the FSC's mandatory nature. Thereafter, the Court turns to whether this action falls within the scope of the FSC.

Because most of Gruner's claims and all of ABC Loan's counterclaims come within the purview of the FSC, the Court then determines whether extraordinary circumstances counsel against transfer. Upon review of the applicable public-interest factors, the Court concludes that such extraordinary circumstances do not exist.

Next, the Court engages in a standard § 1404(a) venue analysis for Gruner's TDCA claims that are beyond the scope of the FSC. Considering relevant public and private-interest factors, the Court finds that these claims should be transferred, too. Accordingly, the Court transfers this action to the Southern District of District of Georgia, Augusta Division.

### *A. The Enforceable, Mandatory FSC Covers Most of the Claims in This Action.*

#### 1. The FSC is enforceable.

The Court first addresses whether the FSC is enforceable. "[A] forum[-]selection clause is prima facie valid and should be enforced unless the resisting party shows that enforcement would be unreasonable." *Seattle-First Nat'l Bank v. Manges*, 900 F.2d 795, 799 (5th Cir. 1990) (citation omitted). Federal law governs whether forum-selection clauses are enforceable. *Von Graffenreid v.*

*Craig*, 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003) (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997)). In the Fifth Circuit, forum-selection clauses are presumed enforceable. *See Haynsworth*, 121 F.3d at 962. This presumption can be overcome "by a clear showing that the clause is unreasonable under the circumstances." *Id.* at 963 (citation and quotation marks omitted). The party resisting enforcement of the forum-selection clause bears the "heavy burden" of showing that one or more of the following renders the clause unreasonable:

> (1) the incorporation of the forum[-]selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum[-]selection clause would contravene a strong public policy of the forum state.

*Id.* (citations and quotation marks omitted)

Here, the FSC is enforceable despite Gruner's fraud allegations related to the MPA. To render a forum-selection clause unenforceable on the basis of fraud, the alleged fraud "must be specific to [the] forum[-]selection clause . . . ." *Id.* Recognizing this principle, Gruner appears to argue that its fraud allegations are specific to the FSC because these allegations implicate a sentence in the same paragraph as the FSC. *See* Doc. 34, Pls.' Resp., 18. But this argument is unavailing. Ultimately, Gruner agrees that it signed a contract stating: "Venue for any legal proceedings against Seller and/or Principal or Purchaser involving the interpretation for enforcement of this document shall be exclusively in COLUMBIA County, Georgia." Doc. 15-1, Def.'s Mot. App., 10; Doc. 34, Pls.' Resp., 16. Consequently, Gruner's allegations of fraud as to a preceding sentence are irrelevant. *See Haynsworth*, 121 F.3d at 963 ("[A] . . . forum-selection clause in a contract is not enforceable if *the inclusion of that clause in the contract* was the product of fraud or coercion." (emphasis in original)

(citation omitted)). Given that Gruner's fraud allegations do not extend to the FSC itself, they are no basis for deeming the clause unenforceable. Further, Gruner has not pointed out, nor has the Court found, any other ground rendering the FSC unenforceable. Accordingly, the Court holds that the FSC is enforceable.

2. The FSC is mandatory.

Next, the Court must determine whether the FSC is permissive or mandatory. "A mandatory [forum-selection clause] affirmatively requires that litigation arising from the contract be carried out in a given forum." *Weber v. PACT XPP Techs.*, AG, 811 F.3d 758, 768 (5th Cir. 2016). Such a clause "contains clear language specifying that litigation *must* occur in the specified forum[.]" *Id.* (emphasis in original) (citation omitted). A permissive forum-selection clause, on the other hand, "is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum." *Id.* "Only mandatory clauses justify transfer or dismissal." *Id.*

The Court agrees with the parties that the FSC is mandatory. *See* Doc. 15, Def.'s Mot., 4; Doc. 34, Pls.' Resp., 19–20. Specifically, the FSC states that venue for proceedings within the scope of the clause "shall be exclusively in COLUMBIA County, Georgia." Doc. 15-1, Def.'s Mot. App., 10. The word "exclusively" constitutes clear language pointing to the clause's mandatory nature. *E.g.*, *Excentus Corp. v. Giant Eagle, Inc.*, 2012 WL 2525594, at *3 n.4 (N.D. Tex. July 2, 2012) (citation omitted); *NS412, LLC v. Finch*, 2019 WL 4329947, at *5 (N.D. Tex. Sept. 11, 2019) (citation omitted). Thus, the Court holds that the FSC is mandatory.

3. Most of Gruner's claims and all of ABC Loan's counterclaims fall within the scope of the FSC.

Now, the Court turns to the crux of the dispute—whether this action falls within the scope

of the FSC.

*a. Gruner's Claims*

The Court first examines Gruner's three causes of action against ABC Loan. The first claim is for tortious interference with existing contracts. Doc. 5, Am. Notice of Removal, Ex. E-2, 12. Gruner alleges that ABC Loan interfered with installment sale contracts between Gruner and its customers by repeatedly contacting the customers and, in the course of these contacts: soliciting payments, "claiming that [Gruner] was temporarily closed due to the COVID-19 pandemic," claiming customers owed money, acting as a lienholder on vehicle titles, and threatening customers with repossession or legal action. *Id.* at 12–13.

According to Gruner, "ABC Loan did not have the legal right to interfere with the installment sale contracts because the [MPA], under which it purported to purchase the installment sale contracts, is void due to illegality." *Id.* at 13. Specifically, Gruner explains that under Texas law, ABC Loan must be an "authorized lender," "a credit union," or "hold[] a license" in order to act as an assignee or transferee of a vehicle installment sale contract. *Id.* at 11–12 (citing Tex. Fin. Code §§ 348.501, 348.001(3)). Since ABC Loan does not satisfy any of these prerequisites, Gruner alleges, the MPA purporting "to transfer ownership of consumer vehicle installment sale contracts . . . to ABC Loan" is void. *Id.* at 12. Thus, Gruner's tortious-interference claim is premised upon whether the MPA is void.

Gruner next alleges violations of various subsections of the TDCA based on ABC Loan's contact with Gruner's customers. *Id.* at 14–16. Like the tortious-interference claim, some of Gruner's TDCA claims are premised on the illegality of the MPA. *See, e.g.*, *id.* at 15 (alleging a TDCA violation based on ABC Loan's claim that it "is entitled to collect on installment sale contracts when,

in fact, ABC Loan cannot legally be a holder of those contracts"); *id.* at 16 (alleging a TDCA violation based on ABC Loan's threats to take legal action "when . . . it has no legal right to do so"). Others, however, appear to rest on grounds independent of the illegality of the MPA. *See, e.g.*, *id.* at 15 (alleging a TDCA violation based on ABC Loan's representation that Gruner was closed due to the COVID-19 pandemic).

Finally, Gruner seeks a declaratory judgment that the MPA and any transfers of installment sale contracts under the MPA are void, as well as that Gruner has no obligations under the MPA. *Id.* at 17.

The Court concludes that, aside from the TDCA claims premised upon allegations unrelated to the illegality of the MPA, Gruner's claims fall within the scope of the FSC.

First, these claims require the Court to consider whether the MPA is void due to illegality. To make such a determination, the Court must analyze the MPA in light of Texas law. Put differently, the Court must interpret whether the MPA is enforceable in light of the obligations set forth therein. Thus, Gruner's claims "involv[e] the interpretation for enforcement of" the MPA. Doc. 15-1, Def.'s Mot. App., 10. Gruner suggests that because it seeks to void rather than enforce the MPA, its claims are beyond the scope of the FSC, Doc. 34, Pls.' Resp., 22, but the Court disagrees. Gruner's argument that the MPA is void hinges upon the language of the MPA itself—indeed, Gruner relies on the "central purpose" of the MPA in asserting illegality. Doc. 5, Am. Notice of Removal, Ex. E-2, 12. As a result, Gruner's claims are not wholly divorced from interpretation of the agreement at issue. *Cf. Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 752–54 (S.D. Tex. 2002) (concluding that the plaintiff's tort claims arising from a personal-injury accident while working for the defendant were not "a disagreement arising from the enforcement of" his employment contract).

Second, defense of these claims will implicate the terms of the MPA. In its answer, ABC Loan asserts that the MPA is governed by Georgia—not Texas—law. Doc. 5, Am. Notice of Removal, Ex. C-23, 6. So to defend against Gruner's claims, which rest on the assumption that Texas law governs the MPA, ABC Loan seeks to enforce the MPA's choice-of-law provision. Courts in this district have repeatedly examined the defenses of claims at issue to determine whether the claims fall within the scope of a forum-selection clause. *See, e.g.*, *Aerus LLC v. Pro Team, Inc.*, 2005 WL 1131093, at *7 (N.D. Tex. May 9, 2005) (reasoning that the plaintiff's claim fell within the scope of the forum-selection clause given the defendant's reliance upon the contract at issue in defending the claim); *Excentus Corp.*, 2012 WL 2525594, at *4 (same). Given that most of Gruner's claims rely upon the substance of the MPA and ABC Loan will defend the claims by seeking enforcement of the MPA, these claims "involv[e] the interpretation for enforcement of" the MPA. Doc. 15-1, Def.'s Mot. App., 10.

Moreover, though the parties disagree upon whether Georgia or Texas law controls the MPA, this dispute does not alter the Court's analysis. As a preliminary matter, in determining the scope of the FSC, the Court applies Texas's choice-of-law rules. *Sabal Ltd. LP v. Deutsche Bank* AG, 209 F. Supp. 3d 907, 918 (W.D. Tex. 2016) (citing, *inter alia*, *Weber*, 811 F.3d at 770–71). "Texas law gives effect to choice[-]of[-]law clauses regarding construction of a contract." *Id.* (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003)). So under Texas law, the MPA is "controlled, construed and enforced" under either Texas or Georgia law—depending on which version of the MPA's choice-of-law clause is correct. Doc. 15-1, Def.'s Mot. App., 10.

Even assuming, as Gruner suggests, that Texas law governs the MPA and thus guides the Court's determination of the scope of the FSC, the Court's analysis above comports with Texas law.

Under Texas law, "[w]hether [Gruner's] noncontractual claims fall within the [FSC's] scope depends on the parties' intent . . . and a common-sense examination of the substantive factual allegations." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 437 (Tex. 2017) (citation and quotation marks omitted). Further, Texas courts "may seek guidance from federal law analyzing forum-selection clauses[.]" *Id.* (citation omitted). Because the Court has engaged in a common-sense analysis of Gruner's claims with reference to federal law, its determination of the scope of the FSC comports with Texas law. Thus, Gruner's argument that the choice-of-law clause requires the application of Texas law does not exempt Gruner's claims from the FSC.

Nor does the language of the choice-of-law clause compel a different result. In *Oxysure Therapeutics, Inc. v. Gemini Master Fund, Ltd.*, the Eastern District of Texas held that the plaintiff's contract-validity claims did not fall within the scope of the forum-selection clauses within the contracts at issue that "encompass[ed] only interpretation, enforcement, and defense . . . ." 2016 WL 4083241, at *7 (E.D. Tex. July 8, 2016). The district court emphasized that a choice-of-law provision in the contracts "expressly reference[d] validity[.]" *Id.* As a result, the court interpreted the forum-selection clauses as too narrow to cover the plaintiff's contract-validity claims. But here, the choice-of-law provision in the MPA fails to address validity altogether. *See* Doc. 15-1, Def.'s Mot. App., 10. Thus, unlike the contracts in *Oxysure*, the MPA does not contain language suggesting that the FSC excludes claims regarding validity.

In sum, except for Gruner's TDCA claims alleging conduct that violates the TDCA irrespective of the legality of the MPA, Gruner's claims require the Court to analyze the content of the MPA. Consequently, Gruner's action—excluding some of its TDCA claims—is one "involving the interpretation for enforcement of" the MPA. Doc. 15-1, Def.'s Mot. App., 10.

*b. ABC Loan's Counterclaims*

Now, the Court examines ABC Loan's five counterclaims, three of which are pleaded in the alternative.

ABC Loan asserts a breach-of-contract counterclaim for breach of the MPA and other agreements by which it purchased installment contracts "in accordance with the terms of the MPA." Doc. 5, Am. Notice of Removal, Ex. C-23, 6–7. Additionally, ABC Loan brings a conversion counterclaim, alleging that it is the owner of the installment contracts, and that Gruner has converted these contracts and their proceeds by refusing to remit payment to ABC Loan. *Id.* at 8–9.

Both of these counterclaims fall within the scope of the FSC because they "involv[e] the interpretation for enforcement of" the MPA. *See* Doc. 15-1, Def.'s Mot. App., 10. Indeed, the breach-of-contract counterclaim relies upon Gruner's obligations under the MPA, and the conversion counterclaim is premised upon ABC Loan's rights under the MPA.

Likewise, ABC Loan's alternative counterclaims—promissory estoppel, money had and received, and unjust enrichment—fall within the scope of the FSC. *See* Doc. 5, Am. Notice of Removal, Ex. C-23, 7, 9, 10. Each claim, again, is based upon ABC Loan's ownership rights to payments made by Gruner's customers. *See id.* And ABC Loan's factual allegations make clear that it seeks, first and foremost, to enforce the MPA—specifically, its provision requiring Gruner to remit customer payments. *Id.* at 5–6. Under these circumstances, the remaining counterclaims come within the scope of the FSC even though they are alternative to contractual theories of liability. *See Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("[W]here the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain as to the appropriate forum for litigation." (alterations incorporated)

(citing *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *cert. denied*, 464 U.S. 938 (1983))). Accordingly, all of ABC Loan's counterclaims come within the scope of the FSC.

*B. There Are No Extraordinary Circumstances Prohibiting Transfer of the Claims Subject to the FSC.*

The Court now analyzes whether this is an "unusual case[]" presenting "extraordinary circumstances" that counsel against transferring the claims subject to the FSC. *See Atl. Marine*, 571 U.S. at 62, 64. Like the parties, the Court will focus on the two public-interest factors applicable here: "the local interest in having localized interests decided at home" and "the familiarity of the forum with the law that will govern the case." *In re Volkswagen*, 545 F.3d at 315; *see* Doc. 34, Pls.' Resp., 24–25; Doc. 15, Def.'s Mot., 6–7.

The localized-interests factor slightly favors Texas. As Gruner notes, Texas maintains an interest in resolving a dispute regarding debt-collection activities directed toward its residents. Doc. 34, Pls.' Resp., 24. Further, this case hinges on whether Gruner or ABC Loan has the right to proceeds of installment sale contracts that were entered by Gruner, which is based in Texas, with its Texas customers. On the other hand, ABC Loan points out that this dispute "involves a Georgia business . . . ." Doc. 15, Def.'s Mot., 6. While both Texas and Georgia maintain an interest in deciding this case at home, this factor tips in favor of Texas given that the customers allegedly harassed, who entered into installment contracts crucial to this action, are in Texas.

With respect to each forum's familiarity with the relevant law, this factor is more complicated. The parties sharply dispute whether the choice-of-law provision in the MPA states "Texas" or "Georgia." But even assuming that Texas law governs any of the claims in this action, "federal judges routinely apply the law of a [s]tate other than the [s]tate in which they sit." *Atl.*

*Marine*, 571 U.S. at 67. Thus, even if a Georgia district court must apply Texas law, this circumstance is not so extraordinary as to warrant keeping the claims subject to the FSC in Texas.

Overall, there are no extraordinary circumstances prohibiting transfer of the claims subject to the FSC, so the Court **TRANSFERS** these claims to the Southern District of Georgia, Augusta Division.

C. *Gruner's TDCA Claims Falling Outside the Scope of the FSC Are Also Subject to Transfer.*

Finally, the Court must address the proper venue for those claims beyond the scope of the FSC: Gruner's TDCA claims premised upon conduct alleged to violate the TDCA irrespective of the illegality of the MPA.[5] Because these claims are not subject to the FSC, the Court conducts a typical § 1404(a) analysis.

Under § 1404(a), the Court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought[.]"[6] The party seeking transfer under § 1404 bears the burden of demonstrating good cause for transfer—"the transferee venue must be clearly more convenient than the venue chosen by the plaintiff." *AT&T Intell. Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (citation and quotation marks omitted).

To determine whether transfer is appropriate, the Court considers the relevant public-interest factors already discussed, which slightly favor Texas. *See supra* Section III.B. Additionally, the Court weighs private-interest factors such as: (1) the "relative ease of access to sources of proof"; (2) the

[5] Gruner does not distinguish between its TDCA claims that implicate the enforceability of the MPA and those that do not. The Court nonetheless draws such a distinction based on Gruner's factual allegations.

[6] Here, Gruner agrees that it could have brought its claims in Georgia. Doc. 34, Pls.' Resp., 13 n.6.

"availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses"; and (3) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atl. Marine*, 571 U.S. at 62 n.6 (citation omitted).

As applied here, the private-interest factors favor both Texas and Georgia. First, there are sources of proof in both states: Gruner intends to rely upon testimony from its Texas customers, while ABC Loan will presumably rely upon testimony from its Georgia employees. *See* Doc. 34, Pls.' Resp., 23. Second, neither party has identified any unwilling witnesses, though the cost of attendance of willing witnesses may favor Texas if Gruner calls more witnesses than ABC Loan. Finally, neither party has identified practical problems weighing in favor of one forum over another.

But the factors enumerated above are non-exclusive, and the Court finds one additional consideration dispositive: "the clear inconvenience that would result from . . . leaving the parties to litigate closely-related claims and counterclaims in two fora." *Cortese v. Evolve Bank & Tr.*, 2015 WL 3539587, at *1 (N.D. Tex. June 5, 2015). If the Court were to sever some of Gruner's TDCA claims from the rest of the action, "the parties would face the increased expense and inconvenience of litigating related cases[.]" *Id.* at *9. And not only would the cases be related—they would involve many of the same factual allegations and witnesses. Under these circumstances, transfer of Gruner's remaining TDCA claims is consistent with the purpose of § 1404(a). *See id.* ("Severing . . . would *not* further the goals of § 1404(a), especially where, as here, many material underlying facts overlap[.]" (emphasis in original)). Accordingly, the Court **TRANSFERS** Gruner's remaining claims to the Southern District of Georgia, Augusta Division.

## IV.

## CONCLUSION

To the extent ABC Loan seeks dismissal, the Court **DENIES** its motion (Doc. 15), but insofar as ABC Loan seeks transfer, the Court **GRANTS** its motion (Doc. 15). Most of Gruner's claims, as well as all of ABC Loan's counterclaims, are subject to the FSC, which mandates venue in Columbia County, Georgia. Further, for convenience, Gruner's TDCA claims falling outside the scope of the FSC should be litigated in Georgia, too. Accordingly, the Court **TRANSFERS** this case to the Southern District of Georgia, Augusta Division.

**SO ORDERED.**

**SIGNED: January 8, 2021.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE